UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DESTINEE MOLIGA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QDOBA RESTAURANT CORPORATION, and DOES 1-20,<br><br>Defendants. | CASE NO. 2:23-CV-01084-LK<br><br>ORDER TO SHOW CAUSE |

This matter comes before the Court sua sponte. Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This determination is an "inflexible" threshold requirement that must be made "without exception, for jurisdiction is power to declare the law and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (cleaned up). For the reasons discussed below, Qdoba's notice of removal fails to plausibly allege the elements of diversity jurisdiction or the requirements of the Class Action Fairness Act of 2005 ("CAFA"). It must accordingly show cause, within 10 days, why the Court should not

ORDER TO SHOW CAUSE - 1

remand this case to King County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("[A] case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand." (emphasis omitted)).

## I.  BACKGROUND

Plaintiff Destinee Moliga initiated this putative class action against Qdoba for violations of Washington's Equal Pay and Opportunities Act. *See generally* Dkt. No. 1-2. She and "more than 40" prospective class members "applied to job openings with [Qdoba] . . . where the job postings did not disclose the wage scale, salary range, and/or a general description of the benefits and other compensation to be offered." *Id.* at 4, 6; *see* Wash. Rev. Code. § 49.58.110(1). Moliga's complaint seeks "[s]tatutory damages equal to [her] and the Class members' actual damages or five thousand dollars, whichever is greater"; costs and reasonable attorney fees; "[d]eclaratory relief to the effect that [Qdoba]'s failure to disclose in each posting for each job opening the wage scale or salary range violates Washington law"; and "[p]reliminary and permanent injunctive relief prohibiting, restraining, and enjoining [Qdoba] from engaging" in the conduct alleged in the complaint, including "an Order requiring [Qdoba] to disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant[.]" Dkt. No. 1-2 at 7.

Qdoba timely removed this case to federal district court pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) and (d)(2) (CAFA jurisdiction). Dkt. No. 1 at 1; *see also* 28 U.S.C. §§ 1441(a), 1446(a)–(b). As relevant here, it contends that Section 1332(a)'s amount-in-controversy requirement is met because Moliga "seeks injunctive relief and attorney fees as set out in . . . the remedies sections of RCW 49.58.110(4) and RCW 49.58.070(1)." Dkt. No. 1 at 6.

And "[i]f this case proceeded to trial," Qdoba argues, Moliga's "recoverable attorney fees would easily exceed $75,000, even without consideration of the cost of complying with the injunction or any damages awarded." *Id.* Qdoba further asserts that "potential statutory damages exceed the $5,000,000 threshold for CAFA based on the number of potential class members as [Moliga] appears to define them." *Id.*

## II.   DISCUSSION

Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). A removing defendant must, however, file "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Procedure and containing a short and plain statement of the grounds for removal[.]" 28 U.S.C. § 1446(a). The Supreme Court has interpreted this as requiring "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.*, 574 U.S. 81, 89 (2017). "Where, as here, it is unclear or ambiguous from the face of the state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up).

A district court considers the complaint, the allegations in the removal petition, and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (cleaned up). The notice of removal, however, need not "prove" subject matter jurisdiction: "the fact that the party removing a case to a federal district court has the burden of proving that the district court has jurisdiction does not mean that the notice of removal must in and of itself meet this burden." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068–69 (9th Cir. 2021). Only when the plaintiff contests, or the district court questions, a defendant's allegations

ORDER TO SHOW CAUSE - 3

must the defendant produce evidence establishing the amount in controversy. *Dart Cherokee*, 574 U.S. at 89; *see* 28 U.S.C. § 1446(c)(2)(B). This is one such case.

Because different standards govern removal under Section 1332(a)(1) and (d)(2), the Court addresses the sufficiency of Qdoba's allegations under both provisions.

**A.     Section 1332(a)(1) – Diversity Jurisdiction**

Diversity jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Whenever a removing defendant invokes diversity jurisdiction, however, the district court strictly construes the general removal statute against removal. *See Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056–57 (9th Cir. 2018). The strong presumption against removal based on diversity jurisdiction "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). Doubts as to removability are resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

    1.  <u>Complete Diversity</u>

Section 1332(a)(1) requires complete diversity; that is, each plaintiff must be a citizen of a different state than each of the defendants. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004). Qdoba is a citizen of Colorado and California. Dkt. No. 1 at 4; *see* 28 U.S.C. § 1332(c)(1). And the Court disregards the citizenship of the Doe defendants. *See* 28 U.S.C. § 1441(b)(1). In its notice of removal, however, Qdoba suggests that Moliga is a citizen of Washington because she is a resident of Pierce County. Dkt. No. 1 at 4 (citing Dkt. No. 1-2 at 3, ¶ 8). This allegation conflates residency and domicile. A person's state citizenship is "determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-*

*Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person residing in a given state is not necessarily domiciled there, and thus not necessarily a citizen of that state."). Qdoba must therefore supplement its diversity allegations with respect to Moliga's state of domicile and, by extension, her citizenship.

### 2. Amount in Controversy

Qdoba also fails to plausibly allege that the amount in controversy exceeds $75,000 for purposes of diversity jurisdiction. The amount in controversy is an "estimate of the entire potential amount at stake in the litigation[.]" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (emphasis omitted); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("'Amount at stake' does not mean likely or probable liability; rather, it refers to possible liability."). Qdoba is correct in observing that this includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (cleaned up). It also encompasses, among other things, "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Id.* at 648–49. Although future statutory attorney fees are considered "at stake" in the litigation and must be included in the amount in controversy, here again, the removing defendant bears the burden of proving the fee amount by a preponderance of the evidence. *Fritsch*, 899 F.3d at 788, 794; *see also, e.g.*, *id.* at 795 (district courts are "well equipped" to determine "when a fee estimate is too speculative because of the likelihood of a prompt settlement," and "may reject [a] defendant's attempts to include future attorneys' fees in the amount in controversy" if the defendant fails to carry its burden of proof).

Washington's Equal Pay and Opportunities Act entitles Moliga to "actual damages; statutory damages equal to the actual damages or five thousand dollars, whichever is

ORDER TO SHOW CAUSE - 5

greater; . . . and costs and reasonable attorneys' fees." Wash. Rev. Code § 49.58.070(1); *see id.* § 49.58.110(4) (a job applicant is entitled to the remedies listed in Section 49.58.070 when an employer fails to disclose the required information in each job posting). The Court may also award injunctive relief. *Id.* § 49.58.070(1). Qdoba suggests that, should this case proceed to trial, Moliga's "recoverable attorney fees would easily exceed $75,000, even without consideration of the cost of complying with the injunction or any damages awarded." Dkt. No. 1 at 6. This is conclusory. *See Matheson*, 319 F.3d at 1090–91 ("Conclusory allegations as to the amount in controversy are insufficient.").

To be sure, a removing defendant is entitled to—and often must—rely on a "chain of reasoning that includes assumptions" to satisfy its burden of proving by a preponderance of the evidence that the jurisdictional minimum amount is met. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). But such assumptions "cannot be pulled from thin air" and "need some reasonable ground underlying them." *Id.*; *see Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) ("An assumption may be reasonable if it is founded on the allegations of the complaint."). Qdoba offers no chain of assumptions for the Court to evaluate; that is, its conclusion that Moliga's attorney fees alone will exceed $75,000 appears to be plucked from thin air. *See Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."); *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) (a district court "should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own."). Nowhere does Qdoba explain how or why Moliga's attorney fees will be so high. And this is not a case in which it goes without saying that the attorney fees will "easily" climb to great heights. In short, Qdoba needs to connect the dots.

1     Qdoba's allegations about the value of the injunctive relief are likewise insufficient. Such amount "is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (cleaned up). The Ninth Circuit employs the "either viewpoint rule," which looks to "the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). Qdoba must therefore establish, by a preponderance of the evidence, that either (1) the benefit of the injunction to Moliga would exceed $75,000 or (2) the cost to Qdoba of complying with the injunction would exceed $75,000. *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017). The notice of removal does neither. As recounted above, Qdoba makes a passing reference to the cost of complying with an injunction—but only to suggest that Moliga's attorney fees will already exceed $75,000. Dkt. No. 1 at 6. Forced compliance with Section 49.58.110(1) does not automatically supply the minimum jurisdictional amount. There is nothing self-evident about the requested injunctive relief that would permit the Court to conclude, by a preponderance of the evidence, that the value of that relief (to either Moliga or Qdoba) plausibly boosts the amount in controversy above $75,000, even when it is coupled with statutory damages and attorney fees.

    Finally, to the extent Qdoba seeks to aggregate the claims of prospective class members for purposes of diversity jurisdiction, the Court rejects that effort. When filed, a class action "includes only the claims of the named plaintiff" because "[t]he claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) (there cannot be original jurisdiction over the claims of unnamed class members). Put differently, a district court examines only the claims of named plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions. *Id.* at 941.

    Qdoba's notice of removal does not plausibly allege the elements of diversity jurisdiction.

ORDER TO SHOW CAUSE - 7

**B.    Section 1332(d)(2) – CAFA Jurisdiction**

CAFA grants district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant (i.e., there is minimum diversity), and the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6); *see Ibarra*, 775 F.3d at 1195. This statute "significantly expanded federal court jurisdiction in diversity cases," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010), and "was designed to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction,'" *Jauregui*, 28 F.4th at 992 (cleaned up). As such, "no antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee*, 574 U.S. at 89. "But CAFA does impose specific requirements that must be satisfied before federal jurisdiction is conferred." *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 763 (9th Cir. 2023). And Qdoba does not plausibly allege that those requirements are met here.

    1.    <u>Class Size and Minimum Diversity</u>

As an initial matter, the Court is skeptical whether the proposed class exceeds 100 members—at least according to Moliga's complaint and Qdoba's removal allegations. Qdoba purportedly "agrees" with Moliga that "there were at least 100 individuals who submitted job applications during the relevant period." Dkt. No. 1 at 5; *see* Dkt. No. 1-2 at 5 ("There are potentially hundreds of individuals who applied for jobs with Defendants within the time period relevant to this matter."). But submission of a job application does not mean that the attendant job posting was deficient under Washington law. *See* Wash Rev. Code § 49.58.110(1); *see also* Dkt. No. 1-2 at 4 (defining prospective class as all individuals who applied for job at Qdoba in Washington between January 1, 2023 and the date of notice, "where the job posting did not disclose the wage scale or salary range for the position"). And Moliga's complaint otherwise specifies only

ORDER TO SHOW CAUSE - 8

that "more than 40 [c]lass members applied to job openings" involving noncompliant postings. Dkt. No. 1-2 at 4. Qdoba must therefore supplement its allegations with respect to the size of the proposed class.

Minimum diversity is likewise lacking on this record. As discussed above, Qdoba has not adequately alleged Moliga's citizenship.

### 2. Amount in Controversy

Qdoba also fails to plausibly allege that the aggregate class recovery could exceed $5 million. *See* 28 U.S.C. § 1332(d)(6). It instead relies on a single barebones assertion: "[P]otential statutory damages exceed the $5,000,000 threshold for CAFA based on the number of potential class members as Plaintiff appears to define them." Dkt. No. 1 at 6.[1] Unsupported and conclusory allegations like these are deficient for the reasons outlined above. Qdoba has not sufficiently alleged a prospective class of at least 100 members—let alone one large enough for recovery to per se exceed $5 million. Nor is it otherwise evident from the face of Moliga's complaint that more than $5 million is on the line in this case. Indeed, Moliga avers that the opposite is true. *See* Dkt. No. 1-2 at 3 ("[T]he amount in controversy does not exceed the sum or value of $5,000,000[.]"). Such assertions are of course not dispositive of the amount-in-controversy inquiry, *see Ibarra*, 775 F.3d at 1197, but there is "little indication" of "the average amount of damages" suffered by the purported class members. *Moe*, 73 F.4th at 762.

Qdoba's notice of removal therefore fails to adequately allege CAFA's requirements.

---

[1] Sanjay Shastri's conclusory statement that "the amount in controversy exceeds five million dollars" because "Plaintiff claims that each 'applicant' is entitled to damages of at least $5,000," Dkt. No. 3 at 2, again overlooks the fact that submission of a job application does not necessarily mean that the attendant job posting was deficient or that the applicant otherwise has a cause of action under Section 49.58.110. *Ibarra*, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."). And Shastri—Qdoba's Vice President of Human Resources—does not indicate how many of the "over 1000 applications" received by Qdoba restaurants in Washington State between January 1, 2023 and July 1, 2023, Dkt. No. 3 at 2, were responding to deficient job postings.

ORDER TO SHOW CAUSE - 9

## III. CONCLUSION

Qdoba shall have 10 days from the date of this Order to supplement its notice of removal and show by a preponderance of the evidence that the jurisdictional requirements are satisfied. *See Acad. of Country Music*, 991 F.3d at 1069; 28 U.S.C. § 1446(c)(2)(B). Moliga may also submit proof of the amount in controversy within 10 days of the date of this Order. *See Moe*, 73 F.4th at 762. Should Qdoba fail to timely respond to this Order and establish by a preponderance of the evidence that the requirements of either Section 1332(a)(1) or (d)(2) are met, this case will be remanded to King County Superior Court.

Dated this 7th day of August, 2023.

*Lauren King*
Lauren King
United States District Judge