The Honorable Lauren J. King
Hearing Date: October 20, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DESTINEE MOLIGA, individually and on
behalf of all others similarly situated,

              Plaintiff,

      v.

QDOBA RESTAURANT CORPORATION, a
foreign for profit corporation doing business as
QDOBA MEXICAN EATS CORPORATION;
and DOES 1-20,

              Defendant.

NO. 2:23-cv-01084 LK

PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

## I.      INTRODUCTION AND RELIEF REQUESTED

Plaintiff Destinee Moliga respectfully requests that this Court deny Defendant Qdoba Restaurant Corporation's ("Qdoba") Motion to Dismiss because she is the victim of a discriminatory job posting and application process, proof of which does not require tangible economic harm; and because Qdoba consented to Article III standing when it removed this matter from King County Superior Court. Regarding the first of these two points, Washington's Equal Pay and Opportunities Act, Wash. Rev. Code ("RCW") § 49.58 ("EPOA"), requires prospective employers to tell applicants how much a job pays as well as the benefits on offer. The discriminatory effect of concealing this information from Ms. Moliga is the very harm the EPOA

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

was intended to prevent. The plain language of the statute is unequivocal—it specifically protects and provides remedies to job applicants, regardless of whether an employer hires them.

Regarding the second, Qdoba implicitly agreed that this Court has Article III standing to hear this matter when it removed it; it is now estopped from arguing the contrary. If this Court disagrees, then the correct remedy is to remand the case or dismiss it without prejudice so Ms. Moliga can re-file in King County Superior Court. Dismissal with prejudice, as Qdoba argues, is _not_ the correct remedy.

After a brief factual introduction, this brief will (1) provide an overview of the EPOA as it applies here; (2) demonstrate that Ms. Moliga has Article III standing under the Ninth Circuit's two-part test; (3) show that Ms. Moliga has stated a claim upon which relief can and should be granted; (4) address Qdoba's assertion that RCW § 49.58.110 violations are subject to the rules of common law torts; and (5) illustrate the public policy reasons for this Court to disregard Qdoba's arguments as to the interpretation of RCW § 49.58.110.

## II.   FACTUAL BACKGROUND

On or about February 28, 2023, Ms. Moliga applied for a Cook position at Qdoba's fast-food restaurant located at 17801 International Boulevard, Seattle, King County, Washington, 98158. Compl. ¶ 15, Ex. A. The job posting Ms. Moliga responded to included a brief summary of the position, its job functions, reasonable accommodation information, the shifts it needed coverage for, the restaurant's address, and a weblink to fill out and submit an application for consideration. _Id_. Qdoba's job posting did not include the wage, wage scale, salary range, or a general description of all other benefits and compensation that Ms. Moliga and her co-applicants would receive upon hire. _Id_. The application included one question about qualifications: whether Ms. Moliga was over eighteen years of age such that she could use, adjust, and clean motorized equipment such as food processors, slicers, dicers, mixers, blenders, and trash compactors. _Id_. Ms. Moliga spent valuable time reviewing the job posting and completing the application. _Id_. ¶ 16. Due to Qdoba's failure to include in the job posting the wage scale or salary range, and a

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 2

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

general description of the benefits to be offered, Ms. Moliga was unable to evaluate the pay for the position or compare that pay to other available positions in the labor market. *Id*. ¶ 17.

### III.  LEGAL BACKGROUND—THE EPOA AND RCW § 49.58.110

The current EPOA represents the Washington Legislature's desire to broaden protections for women and minorities in the workforce. RCW § 49.58.005 (2019). Decades before the EPOA was enacted, Washington passed the Washington State Equal Pay Act ("WSEPA") to address inequity in the labor market. Wash. Rev. Code ("RCW") § 49.12.175. Akin to other civil rights legislation at the time, it required only that employers pay women the same wages as "similarly employed" men absent "factors other than sex." *Id*. Realizing the limitations of the WSEPA, and due to the confusion it caused employers and courts alike, the EPOA was signed into law on March 28, 2018. *Adams v. Univ. of Wash*., 106 Wn.2d 312, 318, 722 P.2d 74, 77 (1986) ("The legislative history of RCW § 49.12.175 does not provide any guidance for interpreting the state provision."). Put another way, the Washington Legislature enacted the EPOA after realizing that gender discrimination in pay practices remained pervasive: "Historically, women have been offered lower initial pay than men for the same jobs even where their levels of education and experience are the same or comparable; and lower starting salaries translate into lower pay, less family income, and more children and families in poverty." RCW § 49.58.005(1)(b)-(c).

Despite workers being afforded additional protections under the EPOA, effective January 1, 2023, the Washington Legislature formally recognized that the gap in wages and advancement opportunities among workers in Washington persisted. RCW § 49.58.005(1). To address these continued inequities, the Washington Legislature amended the EPOA to require employers to disclose wage and salary information in job postings:

> The employer must disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant.

RCW § 49.58.110(1). The Washington Legislature amended the EPOA to include this provision after finding that "[m]andatory wage disclosure allows a discussion at the start of the process

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 3

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

instead of after an offer has been made, which will increase the ability to negotiate pay." H.B. Rep. ESSB 5761, at 2 (Wash. 2022). In sum, the EPOA, like its predecessor, operates to eliminate "[i]ncome disparities" and wage discrimination that has historically limited the ability of women and minorities to provide for their families. RCW § 49.58.005(1).

## IV.    STATEMENT OF THE ISSUES

(A)    *Whether Qdoba's 12(b)(1) Motion to Dismiss should be denied where Ms. Moliga established subject-matter jurisdiction based on the harm she experienced as a result of Qdoba's discriminatory job posting and application process?*

(B)    *Whether Qdoba's (12)(b)(6) Motion to Dismiss should be denied where Ms. Moliga has adequately pled that her civil rights, granted by statute, have been violated?*

(C)    *Whether RCW § 49.58.110 provides statutory protections to a job applicant, regardless of whether an employer ultimately hires the applicant?*

## V.    EVIDENCE RELIED UPON

This Response in Opposition to Qdoba's Motion to Dismiss is based on all of the pleadings and other papers presently on file with this Court.

## VI.    ARGUMENT AND ANALYSIS

### A.    <u>Ms. Moliga has standing to pursue her discrimination claim under Rule 12(b)(1) as a result of Qdoba's discriminatory job posting and application process.</u>

#### 1.    *The Ninth Circuit's two-part test for Article III standing.*

Standing exists when there is a violation of a statute that exists to promote an individual's civil rights: "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). This principle reflects Congress's ability to evaluate "*de facto* injuries," otherwise not actionable at common law, into "legally cognizable injuries." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Proof of economic harm is unnecessary; an injury need not be tangible. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635, 644 (2016). Simply put, it

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 4

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

is a violation of the statute that creates the injury, intangible as that injury may be. *Patel v. Facebook Inc.*, 932 F.3d 1264, 1270-71 (9th Cir. 2019) (*Citing Spokeo, Inc.*, 136 S. Ct. 1540, 1549).

The Ninth Circuit has adopted the following two-part test to determine whether a plaintiff alleging a statutory violation has sufficiently established a concrete injury: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017). For the first prong, the Ninth Circuit emphasizes that "congressional judgment still plays an important role in the concreteness inquiry" and that "Congress's judgment as to what amounts to a real, concrete injury is instructive." *Id*. at 1112. For the second prong, the court held that *Spokeo* "requires some examination of the nature of the specific alleged [violation] to ensure that [it] raise[s] a real risk of harm to the concrete interests that [the statutory scheme] protects." *Id*. at 1116. Here, the Washington Legislature adjudged that an employers' refusal to publish rates of pay in job postings preserved pay inequity. This inequity will remain so long as Qdoba and other Washington employers are permitted to continue withholding their applicants' prospective pay rates.

   a.   **Ms. Moliga satisfies the first Article III standing prong because the EPOA was enacted to protect the interests of Washington employees and applicants alike.**

The EPOA's goal is to promote equal pay among workers in Washington, particularly for women and minorities. RCW § 49.58.005. The EPOA further recognizes that, on average, women earn less than men. *Id*. RCW § 49.58.110 requires Washington employers to publish the "wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant" via its job postings to increase an applicant's ability to negotiate pay and to make the job environment in Washington more competitive for job seekers. H.B. Rep. ESSB 5761, at 2 (Wash. 2022); S.B. Rep. ESSB 5761, at 3 (Wash. 2022). Prior to the Washington Legislature's enactment of RCW § 49.58.110, employers could keep secret their pay for open

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

positions—even up to the point of a job offer. In fact, prior to the enactment of this statute, and RCW § 49.58.100, which prohibits employers from inquiring about an applicant's salary history, employers could withhold pay information, demand that an applicant disclose their salary history, and then base the offered pay on the applicant's prior earnings.

The pay transparency required by RCW § 49.58.110 rebalances a worker's power to negotiate pay with her current **_and_** prospective employers. The word "negotiate" as used in S.B. Rep. ESSB 5761, at 3 (Wash. 2022) refers to pay negotiations with both current and prospective employers. Assuming Washington employers comply with the EPOA, any worker who searches online job postings can immediately ascertain the competitive rate of pay for her skill and experience in her chosen profession. Armed with this knowledge, she can use this information to negotiate with her current employer for pay raises and promotions, or she can use it to negotiate with prospective employers. And she can altogether avoid the wasted time and expense of applying for positions that offer less pay than the market-rate for her skill and experience. As intended, the statute makes Washington "more competitive for job seekers" and was unequivocally established to protect the concrete interests of Washington applicants and employees. S.B. Rep. ESSB 5761, at 3 (Wash. 2022). The Washington Legislature has rightfully judged that an employer's failure to publish this information in job applications amounts to a real, concrete injury, and thus the first prong of this test is met. RCW § 49.58.110(4).

> **b.**     **Ms. Moliga satisfies the second Article III standing prong because Qdoba's failure to publish the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant in its job postings harmed Ms. Moliga.**

This Court's decision in _Beane v. RPW Legal Services_ clarifies the point that failure to provide mandated information alone creates a "harm" sufficient to confer Article III standing on a plaintiff. 378 F. Supp. 3d 948, 956 (W.D. Wash. 2019). In _Beane_, this Court found persuasive Judge Coughenour's reasoning in _Linehan v. AllianceOne Receivables Mgmt., Inc._, No. C15-1012-JCC, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *6-8 (W.D. Wash. Sept. 13,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 6

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

2016). In *Linehan*, Judge Coughenour cited approvingly to a number of cases such as *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016), which held that alleging violations of Section 1692e [of the Fair Debt Collections Practices Act ("FDCPA")] is sufficient to infer injury for the purposes of Article III standing because the consumer "did not receive information to which she alleges she was entitled." *Id*. Per the *Beane* court, "[t]he goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury." *Beane*, 378 F. Supp. 3d 948, 956 (omitting internal quotations). The *Beane* court likewise cited to a long line of post-*Spokeo* cases supporting "informational violations" to "establish a concrete injury sufficient to satisfy the standing elements." *Id*. (*Citing Watkins v. Inv. Retrievers, Inc.*, No. 217CV01348KJMCKD, 2018 U.S. Dist. LEXIS 11717, 2018 WL 558833, at *3 (E.D. Cal. Jan. 24, 2018); *Arellano v. Virtuoso Sourcing Grp., LLC*, No. 17-CV-00681-H-WVG, 2017 U.S. Dist. LEXIS 146884, 2017 WL 3993959, at *3 (S.D. Cal. Sept. 11, 2017); *Byrne v. Oregon One, Inc.*, No. 3:16-CV-01910-SB, 2017 U.S. Dist. LEXIS 132538, 2017 WL 3568412, at *8 (D. Or. July 18, 2017); *Driesen v. RSI Enterprises Inc.*, CV-18-08140-PCT-DWL, 2019 U.S. Dist. LEXIS 9795, 2019 WL 283646, at *3 (D. Ariz. Jan. 22, 2019)).

Likewise, in cases designed to protect similar rights in the employment context, the threshold for Article III standing is simply whether a defendant failed to provide information it was required to disclose. *Magadia v. Wal-Mart Assocs.*, 999 F.3d 668, 679 (9th Cir. 2021). For example, where an employer failed to furnish accurate wage statements, this Court found that failure to disclose statutorily required information in and of itself creates standing. *Id*. Under these wage disclosure cases, the question of whether an employee actually lost wages is irrelevant to standing. *Id*. at 679-680. Cases falling under statutes designed to protect consumer finance mirror this single principle: standing is conferred the moment an individual's right to receive certain information is violated. *See Beane*, 378 F. Supp. 3d 948, 956 (*Citing Church*, 654 F. App'x 990,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 7

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

994) (FDCPA); *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (Truth in Lending Act ("TILA")).

As briefed extensively in the facts section above, the EPOA is a civil rights statute. For civil rights claims, the threshold for Article III standing is even lower. In evaluating whether a civil rights litigant has satisfied the standing requirement, the Supreme Court specifically instructed the Ninth Circuit to take a "broad view of constitutional standing . . . especially where . . . private enforcement suits 'are the primary method of obtaining compliance.'" *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972)). Such is the case here.

The body of civil rights law is rife with examples where Congress has elevated "*de facto*" injuries to legal cognizance. For example, the Civil Rights Act of 1968 elevated an individual's personal interest in living in a racially integrated community" to a cognizable legal injury if a private party is denied that interest. *Id.* (citing *Trafficante*, 409 U.S. 205, 208-12). The Americans with Disabilities Act ("ADA") likewise created a personal interest for disabled persons to live without discrimination through architectural barriers. 42 U.S.C. § 12101(a)(5). With the EPOA, the Washington Legislature has elevated an individual's personal interest in acquiring pay information from employers to a cognizable legal injury if an employer denies them that interest. RCW § 49.58.110. The EPOA is yet another civil rights statute designed to protect the rights of Washingtonians—particularly women and minorities. *Id.* The deprivation of these civil rights inarguably confers Article III standing to victims of discrimination, like Ms. Moliga. *Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019) (Finding that it is a "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.").

The Ninth Circuit case *Langer v. Kiser*, by analogy, shows how the Ninth Circuit has interpreted standing in civil rights cases. 57 F.4th 1085 (9th Cir. 2023). There, Langer sued The Lobster Shop under Title III of the ADA for failing to provide van-accessible parking that he

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1     required to access the restaurant. *Id*. at 1090-1092. The *Langer* court found that Langer had

2     Article III standing to seek injunctive relief under the ADA, merely because he witnessed the lack

3     of ADA parking and indicated his intent to return as a customer once adequate parking was

4     provided. *Id*. at 1098-1100. His perceived inability to access the restaurant in the future, should

5     he wish to do so, conferred upon him Article III standing. *Id*. He was not required to engage in

6     the "futile gesture" of visiting or returning to an inaccessible place of public accommodation to

7     satisfy the standing requirement. *Id*. at 1092 (citing *Pickern v. Holiday Quality Foods Inc*., 293

8     F.3d 1133, 1135 (9th Cir. 2022). Ms. Moliga's inability to access the pay information for Qdoba's

9     open positions is a virtually identical harm—she could not avail herself of a right granted by a

10     civil rights statute. Likewise, there is no requirement that she engage in the futile gesture of

11     becoming an employee for a company that just discriminated against her in the application

12     process, despite Qdoba's assertion to the contrary. Def.'s Mot. to Dismiss 4-8.

13         This Court must assume and infer the intangible harm that Ms. Moliga experienced as a

14     result of Qdoba's discrimination. It must also assume the truth of Ms. Moliga's allegations and

15     draw all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561

16     (9th Cir. 1987) (citing *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.

17     1985)). In doing so, this Court will assume as true that Qdoba's discrimination of Ms. Moliga

18     required her to lose "valuable time in applying for a job" and prevented her from "evaluat[ing]

19     the pay for the position and compar[ing] that pay to other available positions in the marketplace."

20     Compl. ¶¶ 16-18. A wage scale or salary range would have given Ms. Moliga the opportunity to

21     understand what the market was willing to pay her. She would have been in a better position to

22     advocate for herself in future applications and interviews with employers she subsequently

23     applied to. This Court can and should further infer, based on the circumstances, as it should for

24     all victims of discrimination, that Ms. Moliga experienced the frustration and humiliation of

25     discrimination in yet another job application process. *See Phiffer v. Proud Parrot Motor Hotel,*

26

27

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 9

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1    *Inc.*, 648 F.2d 548, 552-553 (9th Cir. 1980) (*Citing Seaton v. Sky Realty Company, Inc.*, 491 F.2d

2    634 (7th Cir. 1974).

3            This Court should also acknowledge that whether Ms. Moliga and the putative Class

4    suffered traditional, economic harm is an open question reserved for discovery. As of the date of

5    this Response, Qdoba refuses to publish the amount it pays for its open positions. We do not yet

6    know whether its pay bands vary based on an applicant's gender, and we do not yet know whether

7    Qdoba demands that successful applicants provide their wage histories so it can then base job

8    offers on applicants' prior wages. Yet the issue of damages is in no way connected to the issue of

9    standing. Standing here is an exceptionally low threshold which is met so long as Ms. Moliga did

10   not have access to the wage scale or salary range of the position as well as a general description

11   of all benefits on offer, at the time of her application. She did not. Compl. ¶ 15, Ex. A. Qdoba's

12   failure to publish this information, as required by the statute, satisfies the second prong of the

13   Ninth Circuit's test for standing.

14       **B.    <u>The instant case should not be dismissed pursuant to Rule 12(b)(6) because
            Ms. Moliga has unequivocally stated a claim upon which relief can and should
15          be granted.</u>**

16           The discussion of Article III standing dovetails neatly into the question of whether Ms.

17   Moliga should be permitted to prosecute her claim for a violation of her civil rights. If this Court

18   has standing to adjudicate this matter, and it clearly does, then Ms. Moliga, who alleged a

19   violation of the civil rights afforded to her via the EPOA, must prove only the existence of this

20   statutory violation. RCW § 49.58.110(1). This is true for any plaintiff whose statutory rights are

21   violated. Ms. Moliga's allegation that her statutory civil rights have been violated is sufficient to

22   meet the minimum burden of Rule 12(b)(6). There is "a powerful presumption against rejecting

23   pleadings for failure to state a claim" as "[i]t is axiomatic that the motion to dismiss for failure to

24   state a claim is viewed with disfavor and rarely granted." *Hall v. City of Santa Barbara*, 833 F.2d

25   1270, 1274 (9th Cir. 1986).

26

27

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1

2

3

4

5

6

7

8

9

10

     The Rule 12(b)(6) pleading standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), is easily met here because Ms. Moliga applied to work for Qdoba in Washington, and Qdoba failed to disclose the wage scale or salary range, and a general description of the benefits and other pay to be offered in the job posting to which she responded. *Id.* These are factual conclusions supported by the job application Ms. Moliga submitted to this Court. Compl. ¶ 15, Ex. A. Qdoba's argument that she experienced no harm would only be valid if she had never applied for work for Qdoba. Yet she did, and Qdoba violated her rights in the process. These allegations alone sufficiently state a "plausible" ground for relief under RCW 49.58.110(1). *See Twombly*, 550 U.S. 544, 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

11

12

13

14

15

16

17

18

19

20

21

22

     In assuming the truth of Ms. Moliga's allegations, this Court must draw all reasonable inferences in her favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). One of those inferences, discussed above, is both the short and long-term harm caused to her pay, promotions, and career as a result of not being privy to the wage offered by her prospective employer. Other inferences include that she was qualified for the entry-level Cook position for which she applied and that she applied because she sought employment from Qdoba. Qdoba offers no facts tending to discredit Ms. Moliga's good-faith effort to acquire a better-paying job in her chosen profession. Def.'s Mot. to Dismiss 2, 9. Qdoba does not testify that Ms. Moliga was under the age of 18 or was unable to "use, adjust, or clean motorized equipment" such as "food processors, slicers, dicers, mixers, blenders, or trash compactors." Compl. ¶ 15, Ex. A. Nor does Qdoba testify that Ms. Moliga would have been restricted from "using knives or manually operated slicers and dicers." *Id*.

23

24

25

26

     In declarations submitted to this Court in support of its efforts to remove this case from King County Superior Court, Qdoba confirmed many of the key allegations within Ms. Moliga's Complaint. Def.'s Response to Order to Show Cause, 2-3. For example, Qdoba admits that it received 1,897 online applications from Washington residents between the enactment of this law

27

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

and June 30, 2023. Decl. of Sanjay Shastri ISO Def.'s Response to Order to Show Cause, ¶ 4. Of the 128 individuals who applied to Cook positions, like Ms. Moliga, Qdoba admits that it withheld pay information from every single one of them. *Id*. Qdoba also admits that these job postings were "virtually identical" to the violative job posting Ms. Moliga responded to. *Id*. ¶ 5. In doing so, Qdoba admits that its regular course of conduct is to altogether ignore RCW § 49.58.110 when publishing job postings in Washington. Put another way, its business practice is to withhold pay information from all of its job applicants with the obvious goal of hiring them at the lowest possible wage – a practice that supports a cycle of pay inequity.

These admissions, coupled with Qdoba's counsel's admission of the EPOA's pay transparency requirements, make its arguments in support of dismissal disingenuous at best. Qdoba's counsel admitted in two recent articles that a failure to post wages in job postings is a violation of law. Fisher Phillips published an article in 2022, explaining that RCW § 49.58.110 "in its current form institutes even more restrictions on employers than the 2019 amendments" to the EPOA. *Washington Employers Will Soon Need to Post Salary Info in Job Postings: A 3-Step Compliance Plan*, Fisher Phillips (Apr. 11, 2022).[1] Specifically, Ms. Morriset highlighted that RCW § 49.58.110 ensures that employers must "publicly advertise" the wage scale or salary range for each position and include a description of the benefits and compensation on offer "along with the job (as opposed to only after an offer on request.)" Jared Gendron, *Starting in 2023, most employers must list salary details in job ads in Washington State*, The Olympian (Jan. 5, 2023) (citing Ms. Morriset's recommendations for how employers can prepare by "enacting processes so information is included in external job postings").[2]

---

[1] https://www.fisherphillips.com/en/news-insights/washington-employers-post-salary-info-job-postings.html (last visited Sept. 12, 2023).
[2] https://www.theolympian.com/news/state/washington/article269527742.html (last visited Sept. 12, 2023).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 12

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1

2

### C.   Contrary to Qdoba's assertion otherwise, the instant case does not include a common law tort claim; thus, Ms. Moliga should not be required to prove a tangible economic harm.

3

4

5

6

7

8

Qdoba asks this Court to interpret RCW § 49.58.110 as a common law tort, and find that Ms. Moliga must prove a tangible economic loss in order to have Article III standing. Def.'s Mot. to Dismiss 8-9. This is not a common law tort case. It is a civil rights case. Economic damages are not required and need not be shown to establish an injury in fact. *Spokeo, Inc.*, 578 U.S. 330, 340. In fact, the EPOA contemplated that economic damages could be difficult to prove, and thus set a damages floor at $5,000. RCW § 49.58.110(4); RCW § 49.58.070(1).

9

10

11

12

13

14

15

16

17

18

19

20

21

Qdoba fails to recognize that the EPOA is a strict liability statute. The EPOA is even more exclusive of intent than many federal statutes dealing with matters of substantial public policy. The test of the FDCPA, for example, suggests a rebuttable presumption of civil liability on violation by introducing an element of intent. 15 U.S.C. § 1692(k)(c). In light of this clause, courts treat substantive violations of the FDCPA as strict liability even in the presence of statutory language like "false, deceptive, or misleading which suggests volition." *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175 (9th Cir. 2006) (quoting 15 U.S.C. § 1692(e)). The EPOA contains no such language and its text is devoid of any references to intent. Like other statutes that ensure than an individual receives disclosures designed to protect their interests, such as the FDCPA, the EPOA imposes strict liability on employers choosing to withhold these wage disclosures from job postings. Liability in this case thus occurred the moment Qdoba, an employer with over 15 employees, withheld the pay rates for the job postings it published—the elements of a common law tort are simply not at issue here.

22

### D.   Public interest requires that this matter remain in this Court or be remanded.

23

24

25

26

In removing a case to federal court, a defendant voluntarily assumes "the burden of establishing federal jurisdiction." *See Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023) (citing *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006)). Thus, a removing defendant must allege facts in the notice of removal supporting the existence of subject-matter

27

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 13

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1    jurisdiction and Article III standing. *Love*, 73 F.4th 751, 755 (citing 28 U.S.C. § 1446(a); *Va.*
2    *House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950-51, 204 L. Ed. 2d 305 (2019)). Here,
3    Qdoba's arguments, taken at face value, suggest that this case should never have been removed
4    to federal court at all. Qdoba disingenuously asserted that removal to federal court was appropriate
5    and that the requirements of subject-matter jurisdiction were satisfied, while furtively planning to
6    argue that this Court did not have jurisdiction to hear the case. This Court should take notice of
7    this blatant attempt to leave the citizens of Washington, a state in which Qdoba employs thousands
8    of people, with no recourse for Qdoba's discrimination against them. If Qdoba's Motion is
9    successful, Qdoba will have effectively wasted judicial resources and the time of everybody
10   involved. But more importantly, it will have *carte blanche* to continue discriminating against
11   Washington workers, particularly against women and minorities.

12        Even if this Court overlooks Qdoba's disingenuous attempt to withhold justice from the
13   workers of Washington, and finds that there is no injury in fact sufficient to satisfy Article III
14   standing, dismissal with prejudice is _not_ an appropriate remedy. In cases removed to federal court
15   under diversity jurisdiction, the proper resolution to a finding that a plaintiff lacks standing is
16   remand of the case to state court because a failure of federal subject-matter jurisdiction means
17   only that the federal courts may not adjudicate the matter—not that the claims lack merit. *See*
18   *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989). "If
19   dismissal were the appropriate procedure in cases like this, plaintiffs would likely refile in state
20   court, only to have their cases removed and dismissed again. Like Sisyphus, condemned to roll a
21   heavy rock up a hill only to have it roll back down just before he reaches the top, these plaintiffs
22   would never see a resolution on the merits." *McGrath v. Home Depot USA, Inc*., 298 F.R.D. 601,
23   611 (S.D. Cal. 2014) (citing *Mirto v. American International Group, Inc*., 2005 U.S. Dist. LEXIS
24   42455, 9 (N.D. Cal. Apr. 8, 2005)). If this Court finds it lacks subject matter jurisdiction, it should
25   remand this matter to King County Superior Court.

26

27

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 14

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

E.      **RCW 49.58.110 provides specific relief to applicants and employees alike.**

Contrary to Qdoba's position, the plain language and legislative findings make clear that applicants, not just employees, are entitled to relief for an employer's failure to disclose the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant in each published job posting. Put another way, to safeguard the Washington Legislature's goal of protecting workers, particularly women and minorities, it included specific remedies for violations of the statute: "A **job applicant** or an employee is entitled to the remedies in RCW § 49.58.060 and 49.58.070 for violations of this section . . . ." RCW § 49.58.110(4) (emphasis added). The provision's plain language makes clear that these remedies are available to both job applicants and employees. *Id*. Qdoba attempts to reconcile its absurd position by quoting a minority Senator's statement during a Senate Labor, Commerce & Tribal Affairs Committee hearing. Def.'s Mot. to Dismiss 7-8. By Qdoba's flawed reasoning, a single legislator's opinion during a committee hearing is enough to dismiss a claim under Rule 12(b)(6) where there is a manufactured uncertainty as to the statute's applicability to job applicants. In context, Senator Schoesler's concerns were not directed at the bill's efforts to prevent employment discrimination and instead referred to his belief that there was widespread abuse of unemployment insurance during the coronavirus pandemic. *Concerning Employer Requirements for Providing Wage and Salary Information to Applicants for Employment: Hearing on SB 5761 Before the S. Comm. On Labor, Commerce, and Tribal Affairs*, 2022 Leg., 67th Leg. Sess. at 32:30 (Wash. 2022) (statement of Sen. Mark Schoesler, Member, S. Comm. On Labor, Commerce, and Tribal Affairs).[3]

Even if this Court were inclined to view those comments as significant in this context, there is ample support for a plain-text interpretation of the bill from its proponents, whose opinions ultimately carried legislative effect. Senator June Robinson testified that the substitute,

---

[3] Hearing available at: https://tvw.org/video/senate-labor-commerce-tribal-affairs-committee-2022011288/?eventID=2022011288 (last visited Sept. 12, 2023).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

which was subsequently adopted, clarifies language in the underlying bill (in favor of Ms. Moliga), and "makes the bill better" by ensuring it is well understood that the job posting requirements include job applicants. *Concerning Employer Requirements for Providing Wage and Salary Information to Applicants for Employment: Hearing on SB 5761 Before the S. Comm. On Labor, Commerce, and Tribal Affairs*, 2022 Leg., 67th Leg. Sess. at 1:21:41 (Wash. 2022) (statement of Sen. June Robinson, Member, S. Comm. On Labor, Commerce, and Tribal Affairs)[4]. Furthermore, Representative Lillian Ortiz-Self testified in support of the subsequently adopted bill, stating that it was " about fairness and making sure everyone has a fair playing field." *Concerning employer requirements for providing wage and salary information to applicants for employment: Hearing on SB 5761 Before the H. Labor & Workplace Standards Comm.*, 2022 Leg., 67th Leg. Sess. at 1:07:00 (Wash. 2022) (statement of Rep. Lillian Ortiz-Self, Member, H. Labor & Workplace Standards Comm.).[5]

Ultimately, the fact that the bill passed as it did supports a broader interpretation of the statute's text. The Washington Legislature intentionally updated RCW § 49.58.110(4) during the drafting process to ensure job applicants were included: "clarifying language [was] added to specify that an applicant or employee" is entitled to either remedy. S.B. Rep. ESSB 5761, at 3 (Wash. 2022). While RCW § 49.58.060 allows for administrative claims via the Department of Labor & Industries, RCW § 49.58.070 permits civil actions for RCW § 49.58.110(1) violations entitling applicants and employees to "actual damages; statutory damages equal to the actual damages or five thousand dollars, whichever is greater; interest of one percent per month on all compensation owed; and costs and reasonable attorneys' fees." RCW § 49.58.070(1). Qdoba's manufactured argument that job applicants are not entitled to the protections of RCW § 49.58.110

---

[4] Hearing available at: https://tvw.org/video/senate-labor-commerce-tribal-affairs-committee-2022011541/?eventID=2022011541 (last visited Sept. 12, 2023).
[5] Hearing available at: https://tvw.org/video/house-labor-workplace-standards-committee-2022021407/?eventID=2022021407 (last visited Sept. 12, 2023).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 16

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

should be disregarded. The statute's language is unambiguous and the Washington Legislature's intent is clear.

## VII.    CONCLUSION

As the criteria for a dismissal pursuant to Rule 12(b)(1) and (b)(6) have not been met, Ms. Moliga respectfully requests that this Court deny Qdoba's Motion to Dismiss such that she may move forward in prosecuting Qdoba for violating her civil rights.

DATED: September 15, 2023

EMERY | REDDY, PLLC

By:    */s/ Timothy W. Emery*
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
Emery Reddy, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com
*Attorneys for Plaintiff Destinee Moliga*

I certify that this memorandum contains 5,638 words, in compliance with the Civil Rules

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - PAGE 17

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

    I hereby certify that on September 15, 2023, I electronically filed the foregoing document
with the Clerk of the Court using the CM/ECF system which will send notification of such filing
to the CM/ECF participants.

4

5

6

7

8

Catharine M. Morisset
Ryan R. Jones
Fisher & Phillips LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email: cmorisset@fisherphillips.com
Email: rrjones@fisherphillips.com

9

10

11

                                        /s/ Jennifer Chong
                                        Jennifer Chong, Legal Assistant
                                        jennifer@emeryreddy.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711